Affirmed and Memorandum Opinion filed October 26, 2004









Affirmed and Memorandum Opinion filed October 26,
2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01219-CR

 

____________

 

JAIME PENALOZA NUNEZ,
Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee



 



 

On Appeal from the 339th District Court

Harris County, Texas

Trial Court Cause No. 905,394



 



 

M E M O R A N D U M   O P I N
I O N

Appellant Jaime Penaloza Nunez
appeals his conviction for possession with intent to deliver a controlled
substance on the ground that his consent to search his house, where the
contraband was found, was not given voluntarily.  We affirm.

Factual and Procedural Background








Houston Police officer William
Tomlinson received information that narcotics were being stored in appellant=s
house.  After several days of
surveillance, Tomlinson finally witnessed appellant drive up to his house,
enter the residence, and then leave with his young daughter.  Appellant placed the child in the back seat
of his car without securing her in a safety seat.  Tomlinson called a police officer in a marked
patrol car to assist him in stopping appellant. 
When the officers determined appellant did not speak English well, they
called Juan Aldape, a Spanish-speaking officer, to serve as an
interpreter.  Appellant was placed under
arrest for failure to restrain his daughter in a safety seat and for not having
a valid driver=s license.  When appellant reached for his wallet in his
back pocket, the officers grabbed it first and, after inspecting it, found a
small plastic bag of cocaine.  They then
handcuffed appellant and placed him in a patrol car.  

The officers drove both the
patrol car and appellant=s car
back to appellant=s
house.  They were greeted by appellant=s
wife.  When the officers determined the
woman was the child=s mother,
they delivered the child to her.  After
searching appellant=s house,
officers found a razor blade, assorted plastic bags, a drug ledger, a scale,
144 grams of cocaine, $3,130 in cash in a closet, $850 in cash in a sweater in
the bedroom, and a pistol in a separate bedroom.

Appellant was charged with
possession with intent to deliver a controlled substance.  He filed a motion to suppress challenging the
voluntariness of the written consent he signed before the search, which gave
the officers permission to search his home. 
After a hearing, the trial court denied this motion.  Appellant then pleaded guilty pursuant to a
plea bargain and was sentenced to twelve years in prison.   

Voluntariness
of Consent to Search

In his sole point of error,
appellant asserts the trial court erred in admitting evidence found in his home
because his consent to search was involuntary. 
Specifically, he argues his consent was not given freely and voluntarily
because, although he initially refused twice, he ultimately was forced to
consent when law enforcement officers threatened his family.








The validity of a consent to
search is a question of fact to be determined from all the circumstances.  Rayford v. State, 125 S.W.3d 521, 528
(Tex. Crim. App. 2003).  The federal
constitution requires the State to prove the validity of the consent by a
preponderance of the evidence.  Id.  At a suppression hearing, the trial judge is
the sole and exclusive trier of fact and judge of the credibility of the
witnesses and their testimony.  Id.  Accordingly, the judge may believe or
disbelieve all or any part of a witness=s
testimony, even if that testimony is not controverted.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000).  In reviewing a
trial court=s ruling on a motion to suppress,
we give almost total deference to a trial court=s
determination of historical facts, and we review de novo the trial court=s
application of the law.  Rayford,
125 S.W.3d at 528.  Furthermore, when the
trial court fails to file findings of fact we view the evidence in the light
most favorable to the trial court=s ruling
and assume that the trial court made implicit findings of fact that support its
ruling as long as those findings are supported by the record. Ross, 32
S.W.3d at 855. 

In this case, appellant and three
police officers testified at the suppression hearing.  Appellant testified as follows:

(1)       Aldape told him he really must not love
his wife and asked him if he would let her be harmed.

(2)       Aldape said they had sufficient proof to
go into his house by finding the cocaine in his wallet.

(3)       Aldape stated that, if they arrested his
wife, his daughter could be taken away and that appellant should sign the
consent form so his wife would not be harmed.

(4)       Tomlinson told appellant that they were
going enter the house whether the consent form was signed or not.

(5)       The police officers told appellant they
would search his house one way or another and that his wife would be
responsible for what was found.

(6)       Appellant was afraid for his wife and
consented to the search because his wife was threatened.

(7)       Appellant felt like he was forced to sign the consent form. 








Tomlinson, the officer conducting
the original surveillance, testified that, at the traffic stop scene, he told
appellant that if there was cocaine in his house, everyone in the house would
be in trouble.  When questioned about
what was said to appellant about appellant=s wife
and daughter, Tomlinson contradicted appellant=s testimony.  Specifically, Tomlinson testified that he did
not:

(1)
      threaten appellant in any way
regarding appellant=s daughter,

(2)
      tell appellant he did not love his
wife because he would not sign the consent form,

(3)       imply or suggest to appellant that
appellant could prevent harm to his wife by signing the consent form,

(4)
      tell appellant that appellant=s wife would be
responsible for what was found in his house, or 

(5)       imply that the officers were going to arrest or take appellant=s wife.

Aldape, the officer who had
served as the Spanish-speaking interpreter, testified as follows: 

(1)       When Aldape saw appellant=s wife, Aldape told
appellant that he was going to ask appellant=s wife to give consent, at
which point appellant said, Adon=t get my wife involved, I=ll sign it.@

(2)       Aldape told appellant that if appellant=s wife did not consent to
the search, they would leave his house and would not be able to search it, but
that appellant already was under arrest for traffic violations and possession
of cocaine. 

(3)       Aldape never made any threats regarding
appellant=s daughter.

(4)
      Aldape did not tell appellant they
were going to enter his house anyway and that appellant=s wife would be
responsible for anything they found.

(5)       Aldape did not say that appellant did not
love his wife because he would not sign the consent form.

(6)
      Aldape never told appellant he was
going to take appellant=s wife.

(7)       Aldape did not tell appellant that if appellant signed the
consent form, appellant=s wife
would not be harmed. 








Viewing the evidence in the light
most favorable to the trial court=s
finding, the record shows that: (1) before ultimately giving his consent to
search, appellant had refused twice; (2) appellant had been read his Miranda
rights before finally signing the consent form; (3) appellant signed the
voluntary-consent-to-search form after it was fully explained to him and after
being repeatedly informed that he was under no obligation to do so; (4)
appellant knew what he was doing when he signed the consent form; (5) the
officers= guns
were not drawn; (6) appellant had been legally arrested for traffic violations;
and (7) appellant informed the officers of where the narcotics were hidden in
his house.  Furthermore, although
appellant testified that he only signed the consent form because the police
officers threatened his wife and daughter, the trial court, as the sole trier
of fact, was free to disbelieve appellant and believe the testimony of
Tomlinson and Aldape.  See Rayford,
125 S.W.3d at 528.  Considering the
totality of the circumstances and giving proper deference to the trial court=s
determination, we hold that the trial court did not err in impliedly finding
that appellant voluntarily consented to the search of his house.

Conclusion

Having found no error in the
trial court=s finding that appellant
voluntarily consented to the search, we find no error in the trial court=s denial
of appellant=s motion to suppress.  Accordingly, we overrule appellant=s sole
issue and affirm the trial court=s judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment
rendered and Memorandum Opinion filed October 26, 2004.

Panel
consists of Chief Justice Hedges and Justices Frost and Guzman.

Do Not
Publish C Tex. R. App. P. 47.2(b).